UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| IN RE: | ) | CASE NO.  12-20008 |
|  | ) |  |
| QUALITY SALES, LLC | ) | CHAPTER  7 |
|  | ) |  |
|  | ) | RE: ECF  NO.  185 |
| DEBTOR | ) |  |

**MEMORANDUM AND ORDER SUSTAINING TRUSTEE'S OBJECTION TO CLAIMS**

## I.    INTRODUCTION

The Perishable Agricultural Commodities Act (hereinafter, "PACA"), 7 U.S.C. §499e,

"imposes a non-segregated floating trust" on all produce-related[1] property of the Debtor in

favor of its PACA qualified produce suppliers.  Because such property is held in trust, it is

excluded from the property of the Debtor's bankruptcy estate, making it unavailable for

distribution to non-PACA claimants. 11 U.S.C. §541(d).  In effect, PACA affords qualified

produce suppliers a priority "superior to all other creditors, including secured creditors."

*D.M. Rothman & Co., Inc. v. Korea Commercial Bank of New York*, 411 F.3d 90, 94 (2d Cir.

2005).

The issue presently before the Court is whether the claims of certain produce

suppliers are qualified PACA trust claims entitled to such priority; or whether they are

allowable only as general unsecured claims against the Debtor's bankruptcy estate.

## II.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over

---

[1]  The Court uses the term "produce-related property" to include all perishable agricultural commodities, their
proceeds, and derivatives.

the instant matter by virtue of 28 U.S.C. §1334(b); and this Court derives its authority to

hear and determine this proceeding on reference from the District Court pursuant to 28

U.S.C. §157(a), (b)(1) and the District Court's General Order of Reference dated

September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(B). *See*

*also In re Kornblum & Co., Inc.,* 177 B.R. 187, 190 -191 (S.D.N.Y.,1995), *vacated and*

*remanded on other grounds,* 81 F.3d 280 (2d Cir. 1996).

### III.    PACA BACKGROUND

Congress enacted PACA in 1930 to regulate the sale and marketing of produce in interstate commerce. . . .

In the early 1980s, Congress reexamined PACA in the wake of a sharp increase in defaults among buyers.  Although it found that PACA generally worked well in making the marketing of perishable agricultural commodities more orderly and efficient, Congress determined that sellers needed greater protection.  Congress noted that, as a result of the exigencies of the perishable commodities business, sellers were typically required to sell their produce quickly and frequently found themselves in the position of unsecured creditors of buyers whose creditworthiness could not be verified.  If buyers defaulted, sellers. . . . [who] were typically unsecured creditors, [ ] generally stood in line behind banks and other lenders who had obtained security interests in the defaulting purchaser's inventories, proceeds, and receivables. As a result, sellers were often unable to collect monies owed to them.  Congress viewed this instability as a burden on commerce and contrary to the public interest.

As a remedy, Congress amended PACA in 1984 to make the sellers' interests in the commodities and sales proceeds superior to those of the buyers' creditors, including secured creditors. It did so by adding section 499e(c), which requires licensed dealers to hold all perishable commodities purchased on short-term credit, as well as sales proceeds, in trust for the benefit of unpaid sellers . . . . This provision impresses a "non-segregated 'floating' trust" on the commodities and their derivatives, in the sense that it permits buyers - i.e., trustees - to commingle PACA trust assets with their other assets.  To enforce payment from the trust, PACA beneficiaries may sue in an appropriate U.S. district court.

Through these mechanisms Congress, in effect, extended a new

benefit to produce sellers. To be entitled to trust protection the sellers were required to extend only short-term credit; and, in the event of defaults, promptly to pursue administrative and judicial remedies.  The sellers' prompt resort to administrative remedies was intended to isolate and to put pressure on financially insecure buyers to meet their obligations or to be forced from the business. The sellers who complied were, in turn, afforded a highly unusual trust beneficiary status that permitted them, in the case of defaults, to trump the buyers' other creditors, including secured ones. But nothing in the text of PACA, in its legislative history, or in its implementing regulations indicates that PACA's super-priority was intended to benefit sellers who dealt in other than short-term credit in accordance with PACA's regulations.

*American Banana Co., Inc. v. Republic Nat. Bank of New York, N.A.*, 362 F.3d 33, 36 - 38

(2d Cir. 2004) (citations omitted).  *See also A&J Produce Corp. v. Bronx Overall Econ.*

*Dev. Corp.*, 542 F.3d 54, 57 - 58 (2d Cir. 2008); *In re Kornblum & Co., Inc.*, 81 F.3d 280,

283 - 284 (2d Cir. 1996).

## IV.    FACTUAL AND PROCEDURAL BACKGROUND

The following undisputed facts are gleaned from the files and records of this case,

of which the Court takes judicial notice.

Quality Sales, LLC (hereinafter, the "Debtor") was engaged in the business of

purchasing, repackaging and selling perishable agricultural commodities (hereinafter,

"Produce") in interstate commerce subject to and with a license from the U.S. Secretary

of Agriculture issued pursuant to PACA, §499e(c).

In the Spring of 2011, Cupola Hollow Farm, LLC and Clark Farms, Inc. (hereinafter,

"Cupola," "Clark," and, together, the "Sellers") entered into agreements for Cupola and

Clark to grow specified varieties of tomatoes and squash, respectively, for sale to the

Debtor.

In accordance with the agreements, the Sellers notified the Debtor when the

Produce was ready to be picked and the Debtor, providing its own labor and transportation, took delivery of the Produce at the Sellers' farms.

The parties had agreed that payments were due 30 days after produce was picked by the Debtor.

The Debtor picked the tomatoes on several dates beginning on August 2, 2011 and concluding on September 30, 2011; and picked the squash on September 28, 2011. PACA Claim, ECF No. 163 at 7.

The Sellers received partial payments from the Debtor on September 16, October 3 & 18, November 14, and December 2, 2011.

The Debtor closed its business on or about December 30, 2011 and commenced the captioned bankruptcy case on January 4, 2012 by filing a voluntary petition under Chapter 7 of the Bankruptcy Code.

The Sellers sent a letter dated January 20, 2012 to the United States Department of Agriculture (hereinafter, the "USDA Letter" and "USDA," respectively) stating: "Pursuant to the USDA 'Perishable Agricultural Commodities Act,' please let this letter serve as notice that we wish to file a complaint against Quality Food Sales *aka* Tasty Tomato *aka* Suffield Farms currently registered with the USDA ID #19971902."  The USDA Letter also briefly described the growing program, indicated the unpaid balances, and asserted that some "pallets, bins and hand tools loaned" by the Sellers to the Debtor remained in the Debtor's closed warehouse.  Notably, the letter makes no mention of a PACA trust or of Seller's intent to preserve any benefits deriving therefrom.

The Court, on November 29, 2012, entered the *Order Establishing PACA Trust Claims and Asset Determination Procedure*, ECF No. 119.  The Sellers timely filed their

*PACA Trust Proof of Claim*, ECF No. 163, asserting a PACA Trust Claim for the unpaid

balance of $41,760.81 plus $2,101.34 for attorney's fees.  The Sellers appended to their

PACA trust claim, copies of various records (dates and quantities of produce picked, a

statement of income and expenses for the tomato project, an invoice for squash) and

copies of correspondence between principals of the Sellers and the Debtor, including an

undated letter that purports to be the agreement for the sales of produce upon which the

Sellers' PACA Trust Claim rests.

The Chapter 7 Trustee  (hereinafter, the "Trustee"*)* filed the *Omnibus Objection to*

*Allowance of Proofs of Claim as PACA Trust Proofs of Claim* (hereinafter, the "Objection"),

ECF No. 185, in which, *inter alia*, she objected to allowance of the Sellers' claim as a

PACA trust claim on grounds that they had not preserved their interests in the PACA trust

by complying with the statutory notice requirements set forth in 7 U.S.C. §499e(c)(3) or (4).

The Sellers filed their *Response to Omnibus Objection to Allowance of Proofs of*

*Claim as PACA Proofs of Claim* (hereinafter, the "Response"), ECF No. 203, to which they

appended a copy of the USDA Letter.  The Sellers urge the Court to adopt a standard of

"substantial," rather than "strict," compliance for PACA's statutory notice requirements and

to find that the Seller's communications with the Debtor, together with the USDA letter, are

sufficient to establish such substantial compliance.

The Court, on March 28, 2013, held a non-evidentiary hearing on the Objection and

the Response.[2]   The Court set dates of April 19, 2013 for filing of simultaneous

---

[2]  Sellers' counsel, at the hearing, requested that the Court hold an evidentiary hearing.  However, none of the
Sellers' allegations of fact are in dispute.  Sellers' counsel stated that he intended to show that the Debtor was
aware of PACA and that Sellers relied on a statement by one of Debtor's principals that PACA was a federal
statute to protect unpaid sellers of produce.  Because neither Debtor's actual knowledge of PACA nor Sellers'
reliance are material to the question of whether Sellers properly preserved any interest they might have had

memoranda and April 26, 2013 for filing any responses thereto.  The Trustee and a creditor

with an allowed PACA trust claim filed memoranda in support of the Trustee's Objection.

The Sellers filed neither a memorandum nor a response.

The Court thereafter took the matter under advisement and, having reviewed the

files and records of the case, including but not limited to the attachments included therein,

sustains, for the reasons ser forth hereinafter, the Trustee's Objection to allowance of the

Sellers' claim as a PACA trust claim.

## V.   DISCUSSION

> Although a PACA trust is automatically established each time a broker or
> merchant purchases perishable commodities upon credit, a particular grower
> or seller of perishable commodities will not be entitled to PACA protection for
> any non-payment claims unless it perfects its claims within [30] days after the
> payment was due by sending a notice of intent to preserve PACA trust
> benefits to both the Department of Agriculture ("USDA") and the particular
> commodities broker alleged to have violated PACA. 7 U.S.C. § 499e(c)(3);
> see also PACA Regs, 49 Fed.Reg. at *45738 (stating that PACA notice
> requirements are "an absolute precondition to pursuing trust assets held by
> a [PACA trustee]").

*Rothman*, 411 F.3d  at 96.  The Trustee contends that the Sellers have forfeited any

benefits to which they might otherwise have been entitled from the PACA trust because

they have not complied with the notice requirements set forth in §499e(c)(3) - (4)[3]:

> (3) The unpaid supplier, seller, or agent shall lose the benefits of such trust
> unless such person has given written notice of intent to preserve the benefits
> of the trust to the commission merchant, dealer, or broker within thirty
> calendar days (i) after expiration of the time prescribed by which payment

---

in the PACA trust, the Court finds an evidentiary hearing unnecessary.  Seller's request for aan evidentiary
hearing l therefor is denied; and the Court will take the matter on the papers.

[3]  The Sellers, who as growers of the produce they sell, are exempt from the licensing requirements of PACA
under 7 U.S.C. §499a(b)(6) (excluding growers from the definition of a "dealer" required to obtain a PACA
license) acknowledge that they are not so licensed; Sellers allege compliance with the "notice" method set
forth in §499e(c)(3) and not the "invoice method" available to licensees under (c)(4).

must be made, as set forth in regulations issued by the Secretary[4], (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

(4) In addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. The bill or invoice statement must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

7 U.S.C. §499e(c)(3) - (4)(footnote added).

The Sellers acknowledge that their invoices did not meet the requirements of §499(c)(4), often referred to as the invoice notice method. Nor do they claim to have sent the Debtor a written notice that strictly complies with the requirements of §499(c)(3). Rather, the Sellers argue that their various communications with the Debtor and the USDA, considered together, constitute "substantial compliance" with the statutory and regulatory requirements of PACA; and they urge the Court to find that such substantial, rather than

---

[4] The default time period under such regulations is 10 days, 7 C.F.R. §46.2(aa)(5); the maximum time period to which parties may agree without forfeiting the protection of the PACA trust is 30 days, 7 C.F.R. §46.46(e)(2).

strict compliance is sufficient to preserve their entitlement to PACA trust benefits.

The Second Circuit Court of Appeals has held that "[s]trict eligibility requirements accompany the extraordinary protection afforded by PACA's trust provision." *American Banana*, 362 F.3d at 42. While "reasonable jurists have disagreed about whether PACA demands strict or substantial compliance with its notice requirements," the prevailing view in this Circuit requires strict compliance with statutory requirements. *Food Authority, Inc. v. Sweet & Savory Fine Foods, Inc.*, 2011 WL 477714, *2 (E.D.N.Y.2011). Slight deviations, when permitted at all, are generally limited to compliance with the regulatory requirements. *Id.* Because it finds that the Sellers have not met even the less rigorous "substantial compliance" standard, the Court need not presently address the question of whether or under what circumstances, something less than strict compliance might be sufficient.

Sellers filed documents entitled "PACA Trust Proof of Claim," ECF No. 163 and "Response to Omnibus Objection to Allowance of Proofs of Claim as PACA Proofs of Claim," ECF No. 203 , to which they appended copies of various documents by means of which they purport to have substantially complied with the PACA notice requirements. Among such attachments, the earliest reference to PACA is an undated note, signed by Kathleen Dunai Thibedeau, one of the Sellers' principals, referencing a meeting, on September 6, 2011, between the Sellers' principals and the Debtor's representative, Frank Bauchiero. It states, in relevant part:

> Mr. Bauchiero informed us that we would not be left out in the cold in regards
> to payment as there is a federal program called PACA. We were informed
> by Mr. Bauchero [sic] that *PACA was a federal insurance policy* of sorts that
> protects the farmer who sells their produce to a large company. PACA

insures that the farmer is paid for the products they sell if the company does not pay up and hold up their portion of the transaction. It was a Federal safety net of sorts.

*Not aware of this procedure.* We as a group reached out to Rick Mascuga from the State of Ct, Department of Agriculture. Mr. Mascuga reiterated what Mr. Bauchiero had stated that PACA was an [sic] program that did help the farmer when payment was being withheld. It was actually a law known as the perishable agricultural commodity act.

ECF No. 163 at 20 (emphasis added).

Notwithstanding their acknowledgment that they were unfamiliar with PACA procedures, the Sellers nevertheless did not thereafter determine and comply with the notice requirements prescribed by the statute to preserve their benefits thereunder.

The Sellers argue that their post-petition January 20, 2012 letter to the USDA should suffice to comply with the PACA notice requirements;  it stated: "Pursuant to the USDA Perishable Agricultural Commodities Act, please let this letter serve as notice that we wish to file a complaint against [the Debtor]."  Sellers' Resp. Exh. B, ECF No. 203-2.  "Notice of intent to preserve benefits under the trust must be in writing, must include the statement that it is a notice of intent to preserve trust benefits . . . ." 7 C.F.R. §46.46(f)(1).  The USDA letter makes no reference to a PACA trust or the intent to preserve benefits thereunder. Rather, the USDA letter is more consistent with the requirements set forth in 7 U.S.C. §499f for filing an informal complaint with the USDA, a procedure not limited to beneficiaries of a PACA trust, but available to "[a]ny person complaining of" an unfair practice under PACA.

Neither was the alleged notice given by the Sellers directly to the Debtor.  *See Rothman*, 411 F.3d 90 (2d Circuit affirmed disallowance of PACA trust claims where sellers proved that they timely sent the required PACA notices to USDA, but did not provide

sufficient evidence to prove that they also timely gave such notices directly to the buyer);

*see, also Consolidated Mktg., Inc. v. Marvin Properties, Inc.*, 854 F.2d 1183 (9th Cir. 1988)

(PACA §499e(c)(3) requires that Seller give PACA notice *directly* to Buyer to preserve its

interest in PACA trust.).

Nor was the alleged notice timely. PACA notice must be given to the Buyer within

30 days of the payment due date. The default payment due date under PACA is 10 days

after delivery of the subject produce, but the parties may, prior to the transaction, agree in

writing to a longer term not to exceed 30 days after delivery of the subject produce. *See*

7 C.F.R. §§46.2(aa)(5) (10 day default provision), 46.46(e)(2) (30 day maximum). The

Sellers' PACA Proof of Claim indicates that the parties had agreed to a 30-day term. The

Debtor took delivery when it picked the subject produce at the Sellers' farms. Because the

final picks of both tomatoes and squash were completed by September 30, 2011, all

payments should have been completed by October 30, 2011 and the required PACA notice

should have been given to the Debtor within 30 days thereafter, i.e., November 29, 2011.

The USDA letter upon which the Sellers rely was dated January 20, 2012. Not only was

the letter untimely for a PACA notice, but it was not sent until after the Debtor had closed

its business and filed a bankruptcy petition.

## VI.   CONCLUSION AND ORDER

For the reasons stated above, the Court concludes that the Sellers' claim is not

covered by the Perishable Agricultural Commodities Act, 7 U.S.C § 499 et seq., in

accordance with which:

**IT IS HEREBY ORDERED** that the Trustee's Objection is **SUSTAINED**; and

**IT IS FURTHER ORDERED** that the Sellers' claim is **DISALLOWED**, in its entirety,

as a PACA trust claim; and

**IT IS FURTHER ORDERED** that the Sellers' claim is **ALLOWED**, as a general

unsecured claim against the Debtor's bankruptcy estate, to the extent of the unpaid

balance of $41,760.81.

Dated: August 19, 2013                                    BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge